### HOLTON *v.* THE STATE.

FISH, C. J. 1. Upon the trial of the accused, charged with murder, after the jury of twelve had qualified upon their voir dire, and had been accepted by the State and the accused, and sent to their room, and before being sworn in chief, the solicitor-general stated to the court that he desired to put upon trial, as to his competency, one of such jurors, for the reason that the juror had expressed a decided bias as to the case, in that he had made the statement that "it ought to be narrated all over the county that the defendant ought to be turned loose, and if he got on the jury he would do it." The solicitor-general further stated to the court that the alleged disqualification of the juror had come to his knowledge since the juror was accepted, and that no one interested in behalf of the State had any knowledge of such alleged disqualification until after the juror had been accepted. After the introduction of evidence in behalf of the State, before the court as a trior, on the question as to the juror's disqualification, and after the juror's statement to the court on the subject, the court found the juror to be qualified, and he served in the trial of the case, and a verdict of guilty was rendered. *Held,* that the court did not err in allowing such investigation as to the competency of the juror. Penal Code (1910), § 1004; *Eberhart v. State, 47 Ga. 598 (3).*

2. One of the grounds of the motion for a new trial was: "Because on the trial of the case, while [a named person], a witness for the defendant, was on cross-examination by the solicitor-general, said witness having testified that in his opinion the defendant on trial, at the time he killed the deceased, was insane, the court erred in ruling out, upon the objection of the solicitor-general, that the same was irrelevant and immaterial, the following answer of the witness: 'About this insult to his wife'—this witness at the time being cross-examined as to his reasons for basing the option [opinion] that the defendant at the time of the homicide was insane." This ground does not sufficiently specify any point for determination.

3. A ground of a motion for new trial, based upon the refusal of the court to permit a given question to be asked by a party of his own witness, furnishes no reason for a new trial, where it does not appear what answer was expected to the question. *Southern Railway Co.* v. *Cunningham*, 123 *Ga.* 90 (50 S. E. 979) ; *Morris* v. *State*, 129 *Ga.* 434 (59 S. E. 223).

4. Upon the trial of one accused of murder, who, in his statement to the jury, admitted committing the homicide, and set .up nothing by way of justification or mitigation, other than that the person killed, several years prior to the homicide, had grossly insulted the wife of the accused, and that the accused was insane at the time of the homicide, it was not error for the court to refuse, upon written request of counsel for the accused, to give in charge to the jury the provisions of the Penal Code (1910), §§ 70, 72, 74, 75, relating, respectively, to justifiable homicide, killing in defense of property or habitation, mutual protection by parents and children, and all other instances standing upon the same footing of reason and justice.

(a) Nor did the court, under the evidence in this case, and the statement of the accused, and in view of the defenses set up, err in refusing to give, upon the written request of counsel for the accused, the following instruction to the jury: "I charge you that the section of the 'code which I have just read you, to wit, that which provides that 'all other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide,' refers to those instances which I have given you under the head of 'justifiable homicide,' killing in defense, or defense of habitation or property, or killing another under the fear of a reasonable man, or killing in his own defense; and that the jury, who, as I have explained previously to you, being the judges. of both the law and the evidence in this case, are clothed with large: discretionary powers over that class of offenses, where the defense is. set up by the slayer that he took the life of another under other instances or circumstances standing upon the same footing of reason and justice as those which I have enumerated; and that it is with the jury to say whether the defense set up in this case, if you should see fit and proper to give weight and credit to the statement of the accused, was such as contemplated by the law when it says that 'All other instances which stand upon the same footing of reason and justice as those enumerated shall be justifiable homicide.'"

(b) There was no evidence authorizing an instruction that, "The homicide

appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged."

5. Where the judge, in his general charge to the jury, fully, clearly, and accurately instructed them as to the law of insanity and the degree thereof that will· excuse a person from criminal liability, and as announced by previous decisions of this court, it was not error to refuse to give in charge, upon written request of counsel for the accused, correct legal principles relating to the same subject, which were fully covered and expressed substantially in the same language by the general charge.

'(a) Nor, under such circumstances, was it error for the judge to refuse a request to give in charge language used by way of argument by textwriters and judges of reviewing courts in other cases, as to "the infinite variety of forms in which insanity and derangement may show itself," and the difficulty in defining "the invisible line that divides perfect and partial insanity."

6. The request to charge upon the subject of impeachment of witnesses was fully covered in the general charge, and in practically the same language as the request.

7. Complaint was made in one ground of the motion for new trial that the court, in charging upon the subject of impeachment of witnesses, instructed the jury as follows: "It being entirely with the jury to determine whether or not a witness has been successfully impeached, whenever they find any evidence of an impeaching nature; and if they should determine that any witness has been successfully impeached, then it is entirely for the jury to determine whether or not they will believe the impeaching witness or the witness sought to be impeached, it being for the jury to pass upon the credibility of the testimony in the case—the evidence in the case." The criticism made upon this charge was: "That it instructed the jury to the effect, that, although they might find that a witness had been successfully impeached, still the jury had a right, after so finding that such witness had been successfully impeached, to believe such impeached witness in preference to the witness by whom such impeachment was made." While this exception to the instruction was well taken, it was not harmful to the accused, for the reason that the only witness sought to be impeached was one who testified in behalf of the accused.

8. The court did not err in instructing the jury as follows: "If the court should err in giving you a principle of law, there is a way by which such error may be corrected. That responsibility does not rest upon your shoulders, and it is therefore your duty to accept the law as given you in charge by the court, and apply those principles of law to the facts as you find them, and make up your verdict, as stated to you."

9. There was no merit in any of the exceptions to the instructions given on the subject of insanity, as they were in almost the identical language of charges approved by this court in *Lee* v. *State*, 116 *Ga.* 563 (42 S. E. 759).

10. In view of the full, clear, and accurate instructions given by the court to the jury on the subject of insanity, the mere failure to charge the jury, "That the insanity of a person charged with crime might appear

from the indicia of the act committed," and "failure to charge the jury the law of partial insanity," was not cause for a new trial. Nor was the failure to charge "the law of delusional insanity" cause for a new trial, for the reason that there was no evidence to authorize an instruction upon that subject; and even if delusional insanity were presented in the statement made by the accused to the jury, the failure to charge upon that subject, in the absence of a proper and timely written request, was not cause for the grant of a new trial.

11. Assignments of error upon the admission of evidence, or the statement of a witness made before the jury while testifying, are not sufficiently made, where it does not appear, from the grounds of the motion in respect thereto, what objection was made and ruled upon by the court in reference to such evidence. *Cook* v. *State,* 134 *Ga.* 347 (67 S. E. 812) ; *Wadsworth* v. *State,* 134 *Ga.* 816 (68 S. E. 649).

12. The evidence authorized the verdict, and the court did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*

NOVEMBER 14, 1911.

Indictment for murder. Before Judge Whipple. Dooly superior court. August 1, 1911.

*W. H. Lasseter* and *Crum & Jones,* for plaintiff in error.

*T. S. Felder, attorney-general, W. F. George, solicitor-general,* and *Watts Powell,* contra.