24913. WHISMAN v. THE STATE.

ARGUED NOVEMBER 12, 1968—DECIDED NOVEMBER 21, 1968.

*Reuben A. Garland, Edward T. M. Garland,* for appellant.

*Earl B. Self, Solicitor General, Bobby Lee Cook, Arthur K. Bolton, Attorney General, Marion O. Gordon, Assistant Attorney General, Courtney Wilder Stanton, Joel C. Williams, Jr., Deputy Assistant Attorneys General,* for appellee.

ALMAND, Presiding Justice. The sole question raised by this habeas corpus appeal is whether Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) is applicable to the instant case because prospective jurors were excluded "for cause" simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction, or whether the instant case comes within the exception set forth in the Witherspoon case because the prospective jurors excluded "for cause" made it unmistakably clear that they would automatically vote against the imposition of capital punishment without regard to the evidence or that their attitude toward the death penalty would prevent them from making an impartial decision as to a defendant's guilt.

This is the third appearance of this appellant, Woodrow Whisman, before this court seeking to set aside his conviction or his sentence of death by electrocution. See *Whisman v. State,* 221 Ga. 460 (145 SE2d 499) and *Whisman v. State,* 223 Ga. 124 (153 SE2d 548).

The appellant appeals from an order of the trial court resentencing him to be electrocuted which provided in part: "It appearing that the mandates set out in Witherspoon v. Illinois, 391 U. S. 510 (36 LW 4504), were in the trial of this case fully complied with, and in this case the imposition of the death penalty was proper under law."

In Witherspoon v. Illinois, 391 U. S. 510, 522, supra, the Supreme Court of the United States expressly held that no defendant can constitutionally be put to death at the hands of a jury selected "by excluding veniremen for cause *simply* because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." (Emphasis supplied.) However, the court set forth an exception to its ruling when it stated: "If the State had excluded only those prospective jurors who stated in advance of trial that they would not even consider returning a verdict of death, it could argue that the resulting jury was simply 'neutral' with respect to penalty." P. 520. Furthermore, in footnote 21 of the opinion the court gives additional clarification to this exception by stating "that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making any impartial decision as to the defendant's *guilt.*" The opening remarks of the court in the Witherspoon case clearly reveal the limited scope of the holding by saying: "The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them." P. 513.

Appellant contends eleven prospective jurors were excluded for cause on the ground that they had either conscientious or religious scruples against capital punishment. However, our inquiry will be limited to determining whether any one of the first eight of these eleven prospective jurors was excluded for cause simply because of conscientious or religious scruples against the death penalty in that the latter three prospective jurors who were excluded for cause were being considered as a thirteenth or alternate juror and the thirteenth or alternate juror who was ultimately selected did not participate in the verdict and sentence. Our concern is only with those prospective jurors who were excluded from the jury that ultimately returned or played some part in determining the verdict and sentence.

This leaves for our determination the issue of whether any one of these eight prospective jurors who were excluded for cause was excused *simply* because of either conscientious or religious scruples against the death penalty.

A survey of the questions and responses of the eight prospective jurors on voir dire who were excused for cause reveals that each of these eight prospective jurors was asked the question: "Are you conscientiously opposed to capital punishment?" To which all eight either definitely indicated or answered affirmatively that they were conscientiously opposed to capital punishment. But this was not the only question put to each of the eight prospective jurors. Each one of the eight was asked the additional question: "Do you mean that under no circumstances that you, notwithstanding what the evidence might show, that you would vote to impose the death penalty, you would not under no circumstances?" or "That is to say that under circumstances and under no conditions irrespective of the severity and gravity of the crime that you would not impose it [capital punishment]?" or "You do not believe in capital punishment, that is to say that under no circumstances and irrespective of the gravity or the severity of the offense that you would not vote to impose death by electrocution? Is that correct?" or a question of very similar import. To a question of this type each of the eight prospective jurors answered: "No, sir" or "That is right" or "According to my religious belief, I couldn't be a party

to it" or some other answer which clearly indicated that under no circumstances would he vote to impose the death penalty.

After a very careful examination of the questions and replies of each of the eight prospective jurors here placed in question, we are of the opinion that all eight unmistakably expressed the view "that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them." Witherspoon v. Illinois, 391 U. S. 510, 522, supra. Therefore, we hold that the instant case comes squarely within the exception set forth in the Witherspoon case, and the trial court properly so ruled. See Brent v. White, 398 F2d 503, 506 (5th Cir.).

*Judgment affirmed. All the Justices concur.*